UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JENNELL M.,

                     Plaintiff,

                                                                                   5:20-CV-0844
v.                                                                             (GTS/CFH)

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

                     Defendant.
_____

APPEARANCES:                                                     OF COUNSEL:

THE DEHAAN LAW FIRM, P.C.                  JOHN W. DEHAAN, ESQ.
  Counsel for Plaintiff
300 Rabro Drive, Suite 101
Hauppauge, NY 11788

SOCIAL SECURITY ADMINISTRATION      MOLLY CARTER, ESQ.
OFFICE OF GENERAL COUNSEL              Special Assistant U.S. Attorney
  Counsel for Defendant
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

# DECISION and ORDER

       Currently before the Court, in this action filed by Jennell M. ("Plaintiff") against Acting Commissioner of Social Security Kilolo Kijakazi ("Defendant") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for judgment on the pleadings. (Dkt. Nos. 17, 23.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted, and Defendant's motion for judgment on the pleadings is denied.

I.      RELEVANT BACKGROUND

   A.      Factual Background

Plaintiff was born in 2000, making her 18 years old at her application filing date and 19 years old at the date of the ALJ's decision. (T. 10.)[2] In her application, Plaintiff alleged that she is disabled due to autism spectrum disorder, attention deficit hyperactive disorder ("ADHD"), diabetes type II, and migraine headaches. (T. 205.)

   B.      Procedural History

On February 1, 2018, Plaintiff applied for Supplemental Security Income. (T. 10.) This application was initially denied on June 12, 2018, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Plaintiff appeared at a virtual hearing before ALJ Jude B. Mulvey, on July 23, 2019. (T. 10, 82-106.) On September 4, 2019, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-19.) On June 2, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

   C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following ten findings of fact and conclusions of law. (T. 10-19.) First, the ALJ found that Plaintiff had not engaged in substantial gainful employment since February 1, 2018, the application date. (T. 12.) Second, the ALJ found that Plaintiff's obesity, ADHD, and autism spectrum disorder were severe impairments. (T. 12-13.) Third, the ALJ found that Plaintiff's severe impairments did not meet or medically

---

[2]      The Administrative Transcript is found at Dkt. No. 12. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"); specifically, the ALJ considered Listings 12.10 and 12.11.  (T. 13-15.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform

> a full range of work at the medium exertional level as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), but with the following non-exertional limitations: she can perform simple, routine, repetitive work involving only simple work related decisions; she can perform work which does not require more than simple, short interactions with supervisors and coworkers and does not require more than occasional contact with the public and, although the individual may work in proximity with others, the tasks performed should not require working in conjunction with others and should predominately involve working with objects rather than people.

(T. 15-17.)  Fifth, the ALJ found that Plaintiff had no past relevant work.  (T. 17.)  Sixth, the ALJ found that Plaintiff was born on January 16, 2000, making her a younger individual between the age of 18-49.  (T. 17.)  Seventh, the ALJ found that Plaintiff had at least a high school education and was able to communicate in English.  (T. 18.)  Eighth, the ALJ found that transferability of job skills is not an issue because Plaintiff does not have past relevant work.  (T. 18.)  Ninth, the ALJ found that Plaintiff was able to perform other work in the national economy as a sweeper cleaner, automobile detailer, and warehouse worker.  (T. 18.)  Tenth, the ALJ therefore concluded that Plaintiff was not disabled during the relevant time period.  (T. 19.)

### D. The Parties' Briefing on Their Motions

#### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, in her motion, Plaintiff makes two main arguments.  (Dkt. No. 17 [Pl.'s Mem. of Law].)  First, Plaintiff argues that the ALJ did not properly consider the medical evidence as required by 20 C.F.R. § 416.920c.  (*Id.* at 23-32.)  Specifically, Plaintiff argues that the ALJ erred in her evaluation of the psychiatric and cognitive medical evidence for the following two reasons: (1) the ALJ failed to fully develop the record because she did not obtain the full

treatment records from Dr. Charles Harris, M.D. ("Dr. Harris"); and (2) the ALJ erroneously afforded more weight to the opinion of Dr. Sandra Juriga, Ph.D. ("Dr. Juriga") than the opinions of Dr. Samuel Chapman, Ph.D. ("Dr. Chapman"), Dr. David Hilton, M.D. ("Dr. Hilton"), Dr. Toby Davis, Ph.D. ("Dr. Davis"), Ms. Jaclyn Hunt, Ed.S. ("Ms. Hunt"), Yvonne Davis, PMHNP-BC ("Nurse Davis"), and Rebecca Hicks, LMSW ("Ms. Hicks"). (*Id.* at 25-32.)

Second, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's credibility. (*Id.* at 32-35.) Specifically, Plaintiff argues that the ALJ failed to consider how her autism spectrum disorder interfered with her ability to engage in normal daily activities, impacted her self-perception, and impacted her ability to communicate with others. (*Id.* at 33-35.)

## 2. Defendant's Motion for Judgment on the Pleadings

Generally, in her motion, Defendant makes four main arguments. (Dkt. No. 23 [Def.'s Mem. of Law].) First, Defendant argues that the ALJ was not required to request from Dr. Harris records of treatment before the relevant time period. (*Id.* at 8-13.) Second, Defendant argues that the ALJ properly evaluated the evidence under 20 C.F.R. § 416.920c for the following two reasons: (1) the ALJ's analysis of Dr. Juriga's assessment complied with the applicable regulations; and (2) Dr. Chapman, Dr. Hilton, Dr. Davis, and Ms. Hunt did not give medical opinions regarding Plaintiff's functional abilities during the relevant period. (*Id.* at 13-21.) Third, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were not entirely consistent with the medical and other evidence. (*Id.* at 21-26.) Fourth, as a result, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff could mentally do a range of simple, routine, and repetitive work during the relevant period. (*Id.* at 7-26.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord*, *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord*, *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.  ANALYSIS

### A.  Whether the ALJ Adhered to Her Duty to Develop the Record

After carefully considering whether the ALJ adhered to her duty to develop the record, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 17 [Pl.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

Because Plaintiff's application for benefits was filed in February of 2018, the amended regulations regarding the weighing of medical source opinion evidence apply to her claim.  Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering weather the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination how persuasive he or she finds all of the medical opinions and explain how he or she has considered the supportability[1] and consistency[2]

---

[1]  On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[2]  On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical

7

factors for those opinions. 20 C.F.R. § 416.920c(b). The ALJ also may—but is not required to—explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion. 20 C.F.R. § 416.920c(c).

"[T]he social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Specifically, "[a]n ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician . . . in order to afford the claimant a full and fair hearing." *Barton v. Colvin*, 13-CV-1199, 2015 WL 5511999, at *4 (N.D.N.Y. Sept. 15, 2015) (Suddaby, J.). The Court, in turn, must conduct a "searching investigation of the record" to ensure that Plaintiff received a "full hearing under the regulations and in accordance with the beneficent purposes of the Act." *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980). When the ALJ has failed to adequately develop the record, the Court must remand to the Commissioner for further development. *See, e.g., Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

Plaintiff argues that the ALJ erred by failing to develop the full treatment records (spanning roughly 10 months) from her treating physician, Dr. Harris. (Dkt. No. 17, at 25-32 [Pl.'s Mem. of Law].) A board-certified psychiatrist, Dr. Harris, treated Plaintiff from February

---

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

22, 2017, until December 18, 2017, when she "aged-out" of the regimented treatment program.³ (*Id.* at 25.)

Of course, where the missing information is immaterial or is otherwise contained in the administrative record, no such obligation exists. *See Stacy D. v. Cmm'r of Soc. Sec.*, 358 F. Supp.3d 197, 206 (N.D.N.Y. 2019) (Baxter, M.J.) (finding that the ALJ is under no obligation to seek additional information "where the ALJ already possesses a 'complete medical history'"); *Hooper v. Colvin*, 199 F. Supp.3d 796, 814 (S.D.N.Y. 2016) ("The inquiry into the need for a treating physician's opinion hinges on the 'circumstances of the particular case, the comprehensiveness of the administrative record,' and 'whether . . . [the record,] although lacking the opinion of [the] treating physician, was sufficiently comprehensive to permit an informed finding by the ALJ.'") (quoting *Sanchez v. Colvin*, 13-CV-6303, 2015 WL 736102, at *5-6 [S.D.N.Y. Feb. 20, 2015]).

More specifically, the Regulations require that, before the ALJ make his or her determination that a claimant is not disabled,

> [the SSA] will develop [the claimant's] complete medical history for at least 12 months preceding the month in which [the claimant] file[s his or her] application unless there is a reason to believe that development of an earlier period is necessary or unless [the claimant] say[s] that [his or her] disability began less than 12 months before [the claimant] filed [his or her] application. [The SSA] will make every reasonable effort to help [the claimant] get medical evidence from [his or her] own medical sources and entities that maintain [the claimant's] medical sources' evidence when [he or she] give [the SSA] permission to request the reports.

20 C.F.R. § 404.1512(b).

---

³ Although the administrative record does not include Dr. Harris' treatment records, it does include Plaintiff's "Discharge Summary/Service Plan-Part I," signed by Dr. Harris and "confirmed" by Tyne McCreadie. (T. 375-83.) In addition, according to Plaintiff, the administrative record includes numerous references to Dr. Harris' treatment records, but not the treatment records themselves. (Dkt. No. 17, at 26.)

"Every reasonable effort" means that the Social Security Administration must do as follows:

> make an initial request for evidence from [a claimant's] medical source and, at any time between 10 and 20 calendar days after the initial request . . . make one follow-up request to obtain the medical evidence necessary to make a determination. The medical source will have a minimum of 10 calendar days from the date of [the SSA's] follow-up request to reply, unless [the SSA's] experience with that source indicates that a longer period is advisable in a particular case.

*Id.* § 404.1512(b)(i); *accord Assenheimer v. Comm'r of Soc. Sec.*, 13-CV-8825, 2015 WL 5707164, at *15 (S.D.N.Y. Sept. 29, 2015). Furthermore, a claimant's "complete medical history" includes, in relevant part, "the records of medical source(s) covering at least the 12 months preceding the month in which [the claimant] file[s her or her] application." 20 C.F.R. § 404.1512(b)(ii).

Generally, before an ALJ can reject a treating physician's diagnosis, he or she must attempt to fill any obvious and material gaps in the administrative record. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *cf. Moran v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009) ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision."). Of course, the ALJ is not required to obtain an opinion or every piece of evidence from a treating source before making a determination, but rather must make only a reasonable effort to do so. *See Drake v. Astrue*, 443 F. App'x 653, 656 (2d Cir. 2011) (finding that the fact that a provider did not additional records to the ALJ did not mean that the ALJ had failed to take reasonable efforts to develop the record because the ALJ had

10

requested those records); *Keys v. Berryhill*, 16-CV-0448, 2017 WL 4324689, at *3 (W.D.N.Y. Sept. 29, 2017) (finding that, where the ALJ sent a request for records to a provider and then sent a follow-up request for additional information, it was reasonable for the ALJ to construe the provider's lack of response to the second request as an indication that the provider had sent all the information it had available).

"The ALJ's duty to develop the record is further enhanced when the disability in question is a psychiatric impairment." *Santiago v. Comm'r of Soc. Sec.*, 13-CV-3951, 2014 WL 3819304, at *15 (S.D.N.Y. Aug. 4, 2014); *see also Atkinson v. Barnhart*, 87 F. App'x 766, 768 (2d Cir. 2004) (summary order) (ordering remand for failure to develop the record where the ALJ neglected to seek medical records from treating physicians identified by claimant); *cf. Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (finding that the ALJ discharged his duties to develop the record where he requested documents from various relevant medical sources including treating and primary physicians).

Although the evidence in question precedes the relevant disability period, the Court finds that the evidence is nonetheless relevant to the ALJ's inquiry at step two of the disability analysis (*i.e.*, whether the claimant has a severe impairment that significantly limits her physical or mental ability to do basic work activities). While it is true that SSI benefits can be granted only prospectively and that the issue before the Court is whether Plaintiff was disabled as of the date of her application (*i.e.*, on February 1, 2018), the Court finds that references to Dr. Harris' treatment notes between February 2017 and December 2017, indicate the presence of an ongoing psychological impairment. *See Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) ("Because SSI benefits . . . can only be granted prospectively, the only issue to be determined . . . was whether plaintiff was disabled as of the date of his application . . . ."). Although Dr. Harris

11

provided treatment to Plaintiff before she had filed her SSI application on February 1, 2018, "evidence of Plaintiff's condition before h[er February 1, 2018] application date was not relevant to the ALJ's inquiry at step two [of the disability analysis], to the extent [the evidence] did *not* indicate an ongoing impairment." *Jeffrey G. v. Comm'r of Soc. Sec.*, 20-CV-1016, 2021 WL 4844146, at *6 (N.D.N.Y. Oct. 18, 2021) (Baxter, M.J.) (emphasis added).  Here, however, Dr. Harris' treatment notes before February 1, 2018, do indicate an ongoing impairment.

Indeed, any reports authored by Dr. Harris pertaining to his treatment of Plaintiff between February 2017 and December 2017 clearly occurred within 12 months before Plaintiff's application of February 1, 2018.  Therefore, under 20 C.F.R. § 404.1512(b), the ALJ must have made every reasonable effort to obtain those treatment records that were authored by Dr. Harris. While the SSA made an initial request for Plaintiff's treatment records from the medical source Watertown Child and Adolescent Wellness Clinic (T. 375), the Court finds that (after a review of the administrative record) the ALJ did not make every reasonable effort to obtain Dr. Harris' treatment notes, because no follow-up request was made to obtain them.  Accordingly, remand is warranted because the ALJ failed to ensure that every reasonable effort was made to obtain Plaintiff's treatment records authored by Dr. Harris dated between February 22, 2017, until December 18, 2017.

Finally, the Court rejects Defendant's argument that Plaintiff failed to meet her burden in that "neither Plaintiff nor her representative raised the issue of missing treatment notes." (Dkt. No. 23, at 12 [Def.'s Mem. of Law].)  Here, it is of no consequence that Plaintiff (who was represented at her hearing) did not object to the ALJ continuing the proceeding without accounting for the missing treatment records, because "where there are deficiencies in the record, the ALJ is under an affirmative obligation to develop a claimant's medical history 'even when

the claimant is represented by counsel or . . . by a paralegal.'" *Rosa*, 168 F.3d at 79 (quoting *Perez v. Chater*, 77 F.3d 41, 47 [2d Cir. 1996]); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a trial judge, must [her]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty . . . exists even when . . . the claimant is represented by counsel.") (citation omitted).

For all of these reasons, the Court finds that the gap in the administrative record requires remand.  <u>In order to facilitate a determination supported by substantial evidence, the ALJ is instructed to supplement the record by requesting and obtaining the above-referenced missing treatment notes authored by Dr. Harris.  The ALJ must then redetermine Plaintiff's claim, and issue a new decision.</u>

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 23) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>VACATED</u>**; and it is further

**ORDERED** that this matter is **<u>REMANDED</u>** to Defendant, without a directed finding of disability, for further proceedings consistent with this Decision and Order, pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: May 10, 2022
 Syracuse, New York

*/s/ Glenn T. Suddaby*
Glenn T. Suddaby
Chief U.S. District Judge